# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FIDELITY NATIONAL TITLE INSURANCE CO., as assignee of and successor in interest to LENDERS EDGE SETTLEMENT SERVICES, LLC and INTEGRITY ASSURANCE, INC., | : : : : : : : : : : : : : : : : : : | CIVIL ACTION |
| Plaintiff, | | |
| v. | | No. 16-1360 |
| MAXUM INDEMNITY COMPANY a/k/a MAXUM SPECIALTY INSURANCE GROUP and AMERICAN SAFETY INDEMNITY COMPANY, | | |
| Defendants. | | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                       **SEPTEMBER 12, 2017**

Presently before the Court is Defendant TIG Insurance Company's ("TIG") Motion for Judgment on the Pleadings and/or Motion for Summary Judgment and Plaintiff Fidelity National Title Insurance Co.'s ("Fidelity") Response in Opposition. Also before the Court is Fidelity's Cross-Motion for Summary Judgment, TIG's Response in Opposition, Fidelity's Reply Brief, and TIG's Sur-reply. For the reasons noted below, TIG's Motion for Judgment on the Pleadings and/or Motion for Summary Judgment is granted, and Fidelity's Motion for Summary Judgment is denied.[1]

---

[1] TIG Insurance Company is the successor by merger to American Safety Indemnity Company ("ASIC"), one of the originally named Defendants in this matter. For purposes of simplicity, we will refer to ASIC throughout the remainder of this Opinion.

**I. BACKGROUND**

This is a breach of contract action regarding a professional liability insurance policy ("the Policy" or "ASIC Policy") ASIC issued to Integrity Assurance, Inc. ("Integrity"). (See Compl. ¶ 1; see also Def.'s Mot. J. on Pleadings/Summ. J., Ex. A ("ASIC Policy").) Specifically, Fidelity, an assignee and successor in interest to Integrity's cause of action, claims that ASIC breached its obligation to defend Integrity in a matter filed in the Court of Common Pleas of Philadelphia County known as Fid. Nat'l Title Ins. Co. v. Integrity Assurance, Inc., et al., No. 130902562 ("the Underlying Matter"). ASIC denied a defense and coverage to Integrity for the Underlying Matter via correspondence dated January 31, 2014. (Compl. ¶ 26.) ASIC filed this Motion for Judgment on the Pleadings and/or Motion for Summary Judgment confirming the denial of a defense and coverage and seeking dismissal of all claims directed towards it in this matter. Fidelity filed a Response in Opposition to ASIC's Motion and separately cross-moved for summary judgment.

**A. THE UNDERLYING MATTER**

The Plaintiff in the Underlying Matter is identified as Fidelity National Title Insurance Company, a national title insurance underwriting company. (Def.'s Br. in Support Mot. J. on Pleadings/Summ. J. at 5) (citing Ex. B ¶ 1 ("Underlying Compl.").) The Underlying Complaint was filed on or about September 23, 2013, in the Court of Common Pleas of Philadelphia County, asserting claims of declaratory judgment, negligence and vicarious liability, breach of contract, personal guarantee, and specific performance. (See Underlying Compl.) The Underlying Complaint identified Lenders Edge Settlement Services, LLC ("Lenders Edge"), Integrity, and their owners, principals, and/or alleged employees, Alfred J. Drechsel

("Drechsel"), Andrew C. Salvucci, and Charles W. Morrone, as Defendants. (Underlying Compl. ¶¶ 4-6.)

The Underlying Matter asserted that Fidelity and Integrity entered into an Issuing Agency Contract (the "Contract") that appointed Integrity as a policy issuing agent authorized to undertake certain duties regarding the issuance of title insurance, commitments, policies, endorsements, and other title assurances for real property. (Id. ¶¶ 13-14.) Fidelity alleged that in conjunction with the Contract, the Defendants in the Underlying Matter were obligated to maintain and disburse funds related to the real estate transactions in accordance with the purpose for which they were entrusted. (Id. ¶ 15.) The Underlying Complaint alleged that the Defendants breached the contract by creating "irregularities in the Accounts;" creating "shortfall[s] in both Accounts resulting in many mortgage transactions not being funded and properly closed;" and creating a shortfall in the approximate amount of $2,136,718.69. (Id. ¶¶ 24, 29.) It is specifically alleged that funds from the Accounts were transferred to Drechsel's personal accounts.[2] (Id. ¶¶ 30-34.)

For example, the Underlying Complaint alleged that on September 16, 2013, Fidelity discovered irregularities in the Integrity Escrow Account. (Id. ¶ 23.) The next day, September 17, 2013, Fidelity discussed the irregularities with Drechsel, who acknowledged shortfalls in the Escrow Account that resulted in many mortgage transactions not being funded or properly closed. (Id. ¶ 24.) On September 18, 2013, Fidelity confirmed that Integrity and Lenders Edge were the escrow and title agents for eighteen mortgage transactions with total outstanding mortgage payoffs of at least $3,658,592.72. (Id. ¶ 25.) Fidelity was the underwriter for fifteen

---

[2] The Underlying Complaint refers to "Accounts" because Drechsel is alleged to have transferred money from "The Lenders Edge Escrow Account" and the "Integrity Escrow Account." (See Underlying Compl. ¶ 20.) Because this Opinion concerns only ASIC's alleged obligation to defend Integrity in the Underlying Matter, we will only refer to the "Integrity Escrow Account" or "Escrow Account."

3

of the eighteen transactions, which had outstanding payoffs of $2,871,718.69. (Id. ¶ 26.) On or about September 18, 2013, a representative from Fidelity reviewed the Integrity and Lenders Edge Accounts records and determined that funds from the accounts had been transferred to Drechsel's personal bank accounts.[3] (Id. ¶ 30.)

Two Counts in the Underlying Complaint were specifically directed towards Integrity: Count IV – Negligence and Vicarious Liability ("Count IV" or the "Negligence Count"), which sought monetary damages arising from Integrity's various alleged negligent disregard of its duties; and Count VI – Breach of Contract, which sought monetary damages arising from Integrity's alleged breach of its agency agreement with Fidelity. (See Underlying Compl.) In addition, three Counts were pleaded against all defendants: Count I – Declaratory Judgment; Count IX – Accounting; and Count X – Specific Performance. Fidelity concedes that the ASIC Policy did not cover Counts I, VI, IX, and X, but argues that Count IV, the Negligence Count, was "clearly" covered. (Pl.'s Resp. Opp'n Def.'s Mot. at 11.) Accordingly, the crux of the matter before the Court is whether the ASIC Policy covered Count IV of the Underlying Complaint.

The Negligence Count, which incorporated by reference all prior averments, stated as follows:

> ¶ 61. Defendant Integrity owed a duty to Fidelity to properly maintain or supervise the maintenance of the Integrity Escrow Account and to properly account for all payments and funds Integrity received in connection with the issuance of Fidelity's policies pursuant to the Integrity Contract.
>
> ¶ 62. Defendant Integrity also owed a duty to Fidelity to properly train and supervise the employees and/or principals to whom it assigned such responsibility.

---

[3] The Underlying Complaint detailed a number of transactions between December 21, 2012 and June 12, 2013 that were transfers from the Lenders Edge Account to Drechsel's personal account. (See Underlying Compl. ¶¶ 31-34.)

¶ 63. Integrity breached its duty to Fidelity by negligently disregarding the foregoing duties and responsibilities.

¶ 64. As a result of Integrity's negligent disregard of its duties, Fidelity may be required to indemnify its insured for their covered losses under respective title insurance policies resulting from Integrity's negligent conduct.

¶ 65. As a further result of Integrity's negligent disregard of its duties, Fidelity has been and may be exposed to additional claims from its insureds who may allege to have suffered covered losses under respective title insurance policies resulting from Integrity's negligent conduct.

(Underlying Compl. ¶¶ 61-65.)

## B. THE POLICY

ASIC issued a Policy of Professional Liability Insurance number ENO 6000133 13 02 to Integrity for a Policy Period of August 13, 2013 through August 13, 2014.[4] (ASIC Policy at 2.) The Policy provides the following relevant language:

**SECTION I – INSURING AGREEMENT**

### A. Miscellaneous Professional Liability[5]

Subject to the applicable Limit of Liability, the Company will pay on behalf of the Insured all Damages and Claim Expenses in excess of the Retention that an Insured becomes legally obligated to pay as a result of a covered Claim first made against the Insured during the Policy Period and reported in writing to the Company during the Policy Period . . . for a Wrongful Act by an Insured or by anyone for whom the Insured is legally responsible, in the rendering of Professional Services.

**SECTION II – DEFINITIONS**

A. Professional Services means the following services when performed by the Insured in the ordinary conduct of the Insured's profession for or on behalf of a

---

[4] As is typical of many insurance policies, the ASIC Policy does not contain consecutively numbered pages from the Declarations through the Endorsements. For purposes of clarity, we will utilize the ECF generated pagination when referring to the Policy.

[5] The Policy defines the "Company" as "American Safety Indemnity Company," and the "Insured" as "Integrity Assurance, Inc." (ASIC Policy at 2, 6-7.)

5

customer or client for a fee or other compensation: 1. Title Insurance Agent; 2. Title Abstractor; 3. Title Searcher; 4. Escrow Agent; 5. Closing Agent; 6. Notary Public; 7. Public Records Searcher (including UCC searches); 8. Corporate Document Searcher; 9. Flood Zone Certifications; and 10. Witness Closer.

U. Wrongful Act means any actual or alleged breach of duty, negligent act, error, omission or Personal Injury offense committed by an Insured solely in the performance of, or failure to perform, Professional Services.

**SECTION III – EXCLUSIONS**

This Policy does not apply to any Claim, and the Company is not obligated to defend or pay Damages or Claim Expenses for any Claim alleging, arising out of, based upon, relating to, or attributable to, directly or indirectly:

M. for the breach of express warranties, guarantees or contracts; provided, however, with respect to allegations of breach of contract this exclusion shall not apply to any liability that would have attached in the absence of such contract.

N. arising out of any defect in title (1) not disclosed within public records or (2) of which you had actual or constructive knowledge at the date of issuance of such title.[6]

**TITLE AND ESCROW SERVICES ENDORSEMENT**

This Policy does not apply to any Claim, and the Company is not obligated to defend or pay Damages or Claim Expenses for any Claim alleging, arising out of, based upon, relating to, or attributable to, directly or indirectly, any:

1. Intentional failure to comply with escrow instructions or intentional breach by the Insured in his or her capacity as a title insurance agent, title abstractor, title searcher, escrow agent, closing agent, notary public, public record searcher, corporate documents searcher, flood zone certification, or witness closer;

6. commingling of funds or accounts, inability to pay or failure to safeguard funds.

(ASIC Policy at 5, 8-9, 15-16) (emphasis omitted).

---

[6] "Exclusion N" was added to the ASIC Policy by way of General Change Endorsement EO AS 1000 04 11. (See ASIC Policy at 16.)

## II. LEGAL STANDARD

### A. RULE 12(c) STANDARD

A party may move for judgment on the pleadings "[a]fter the pleadings are closed - but early enough not to delay trial." Fed. R. Civ. P. 12(c). A court may grant a motion for judgment on the pleadings "if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law." DiCarlo v. St. Mary Hosp., 530 F.3d 255, 262 (3d Cir. 2008) (citation omitted). "We 'view[] the facts alleged in the pleadings and the inferences to be drawn from those facts in the light most favorable to the plaintiff.'" D.E. v. Cent. Dauphin Sch. Dist., 765 F.3d 260, 271 (3d Cir. 2014) (quoting Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 253 (3d Cir. 2004)). "A Rule 12(c) motion 'should not be granted unless the moving party has established that there is no material issue of fact to resolve, and [the moving party] is entitled to judgment as a matter of law.'" Id. (quoting Mele, 359 F.3d at 253). "Ordinarily, in deciding a motion for judgment on the pleadings, the court considers the pleadings and attached exhibits, undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents, and matters of public record." Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010) (footnotes omitted).[7]

---

[7] The parties do not dispute that New York law applies to the instant matter. (See Def.'s Br. in Support Mot. J. on Pleadings/Summ. J. at 12; Pl.'s Resp. Opp'n Def.'s Mot. at 9 n.1.) Under New York law, an insurer's duty to defend is determined "whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy." Town of Massena v. Healthcare Underwriters Mut. Ins. Co., 779 N.E.2d 167, 170 (N.Y. 2002). ASIC moves for judgment on the pleadings and/or summary judgment pursuant to Federal Rules of Civil Procedure 12(c) and 56(a), respectively. Under Rule 12(d), if matters outside of the pleadings are presented and not excluded by the Court, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). We need only to consider the Underlying Complaint and the ASIC Policy to determine whether ASIC breached its duty to defend Integrity in the Underlying Matter. See Town of Massena, 779 N.E.2d at 170. Accordingly, we will treat ASIC's Motion as one for judgment on the pleadings because no matters outside of the pleadings and attached exhibits will be considered.

### B. RULE 56(a) STANDARD

Federal Rule of Civil Procedure 56(a) states that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is material if it could affect the outcome of the suit after applying the substantive law. Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" Compton v. Nat'l League of Prof'l Baseball Clubs, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998) (quoting Liberty Lobby, 477 U.S. at 255).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." See Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992). "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. Tziatzios v. United States, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court

determines that there are no genuine disputes of material fact, then summary judgment will be granted. Celotex, 477 U.S. at 322.

C.  **DUTY TO DEFEND**[8]

An insurer's duty to defend is broader than its duty to indemnify. See Durant v. N. Country Adirondack Co-op. Ins. Co., 807 N.Y.S.2d 427, 429 (N.Y. App. Div. 2005). "'Determining whether an insurer has a duty to defend requires an examination of the policy language and the allegations of the complaint to see if the underlying complaint alleges any facts or grounds which bring the action within the protection purchased.'" Int'l Bus. Machines Corp. v. Liberty Mut. Fire Ins. Co., 303 F.3d 419, 424 (2d Cir. 2002) (quoting First Investors Corp. v. Liberty Mut. Ins. Co., 152 F.3d 162, 165-166 (2d Cir. 1998)). "'An insurer must defend whenever the four corners of the complaint suggest—or the insurer has actual knowledge of facts establishing—a reasonable possibility of coverage.'" Id. (quoting Cont'l Cas. Co. v. Rapid-Am. Corp., 609 N.E.2d 506, 509 (N.Y. 1993)). The analysis of whether an insurer must defend its insured "depends on the facts which are pleaded, not the conclusory assertions." Allstate Ins. Co. v. Mugavero, 589 N.E.2d 365, 370 (N.Y. 1992). An insurer is excused from providing a defense when "there is no possible factual or legal basis on which the insurer might eventually be obligated to indemnify [the insured] under any provision contained in the policy." Villa Charlotte Bronte, Inc. v. Commercial Union Ins. Co., 476 N.E.2d 640, 641 (N.Y. 1985) (citations omitted). If any claim against the insured arises out of covered events, the insurer must defend the entire action. See Town of Massena, 779 N.E.2d at 170; E. Ramapo Cent. Sch. Dist. v. N.Y. Sch. Ins. Reciprocal, 54 N.Y.S.3d 413, 417 (N.Y. App. Div. 2017).

---

[8] As noted above, the parties agree that New York law applies. (See Def.'s Br. in Support Mot. J. on Pleadings/Summ. J. at 12; Pl.'s Resp. Opp'n Def.'s Mot. at 9 n.1.)

9

However, "an insurer can be relieved of its duty to defend if it establishes as a matter of law that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured under any policy provision." E. Ramapo, 54 N.Y.S.3d at 418 (citations and internal quotation marks omitted). Policy exclusions must be strictly and narrowly construed and cannot be extended by interpretation or implication. See id. To be excused from its duty to defend based on a policy exclusion, the insurer bears the burden of demonstrating "that the allegations of the complaint [in the underlying action] cast the pleadings wholly within that exclusion, that the exclusion is subject to no other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision." Id. (citations and internal quotation marks omitted) (alteration in original).

### D. INTERPRETATION OF THE POLICY

Insurance agreements are subject to ordinary principles of contract interpretation. See Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 37 N.E.3d 78, 80 (N.Y. 2015). Interpreting an insurance contract is a question of law when the contract terms are clear and unambiguous. See id.; see also LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005). Under New York law, words and phrases should be given their ordinary meaning, and the contract should be construed to give full meaning and effect to all of its provisions. LaSalle Bank, 424 F.3d at 205 (citations omitted).

## III. DISCUSSION

As indicated above, Fidelity concedes that the analysis of whether ASIC had a duty to defend Integrity in the Underlying Matter is strictly confined to Count IV of the Underlying Complaint. (Pl.'s Resp. Opp'n Def.'s Mot. at 12.) ASIC maintains that it owed no duty to

defend Integrity in the Underlying Matter because: (1) there were no factual allegations of negligence made against it, but only conclusory legal contentions; and (2) Exclusions M, N, 1, and 6 excluded coverage for Count IV. (See generally Def.'s Br. in Support Mot. J. on Pleadings/Summ. J.) In response, Fidelity claims that Count IV of the Underlying Complaint was sufficient to trigger the duty to defend and that none of the exclusions on which ASIC relies apply. (Pl.'s Resp. Opp'n Def.'s Mot. at 16-31.) Fidelity also contends that ASIC's reliance on Exclusion C in its coverage denial letter was improper and that Exclusion C actually required ASIC to defend Fidelity in the Underlying Matter.[9] (Id. at 21-22.)

### A. FACTUAL ALLEGATIONS IN THE UNDERLYING COMPLAINT

We will first address ASIC's argument that it correctly denied a defense to Integrity based on the allegations in the Underlying Complaint. "'Determining whether an insurer has a duty to defend requires an examination of the policy language and the allegations of the complaint to see if the underlying complaint alleges any *facts* or grounds which bring the action within the protection purchased.'" Int'l Bus. Machines, 303 F.3d at 424 (quoting First Investors, 152 F.3d at 165-166). Analyzing whether an insurer must defend its insured "depends on the facts which are pleaded, not the conclusory assertions." Mugavero, 589 N.E.2d at 370.

Count IV of the Underlying Complaint alleged that Integrity owed a duty to Fidelity "to properly maintain or supervise the maintenance of the Integrity Escrow Account and to properly account for all payments and funds Integrity received in connection with the issuance of Fidelity's policies pursuant to the Integrity Contract." (Underlying Compl. ¶ 61.) Count IV also

---

[9] Exclusion C provides, "[t]he Policy does not apply to any Claim, and the Company is not obligated to defend or pay Damages or Claim Expenses for any Claim alleging, arising out of, based upon, relating to, or attributable to, directly or indirectly . . . any dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law. . . . The Company will, however, defend Claims alleging any of the foregoing conduct until there is a judgment, final adjudication, adverse finding of fact, or adverse admission, establishing that the Insured committed such conduct." (ASIC Policy at 8.)

11

alleged that Integrity owed "a duty to Fidelity to properly train and supervise the employees and/or principals to whom it assigned such responsibility." (Id. ¶ 62.) ASIC argues that, despite Fidelity's allegations that Integrity was liable for negligent supervision and maintenance of the Escrow Account and negligent training of its employees, there are no facts alleged in the Underlying Complaint to support such claims. (Def.'s Br. in Support Mot. J. on Pleadings/Summ. J. at 18.) ASIC further argues that the allegation of negligent training and supervision of employees is not a "professional service" under the definition of the term in the Policy and under New York law.

In short, there are no *factual* allegations in the Underlying Complaint that would trigger a duty to defend Integrity in the Underlying Matter. Fidelity's Underlying Complaint goes into specific detail about numerous transfers between the Lenders Edge Escrow Account and Drechsel's personal checking account, but lacks any averments regarding specific transfers between the Integrity Escrow Account and Drechsel's account. (See, e.g., Underlying Compl. ¶¶ 31-36.) The Underlying Complaint is devoid of facts to establish any kind of negligent supervision or maintenance of the Integrity Escrow Account or failure to properly supervise employees. It contains what amounts to simple conclusory allegations of duty, breach, causation, and injury. New York law is clear that an insurer's obligation to defend its insured is determined by comparing the factual allegations of the Underlying Complaint to the insurance policy at issue. See Int'l Bus. Machine, 303 F.3d at 424. The particular cause of action pleaded is not what determines defense and coverage obligations. See Mugavero, 589 N.E.2d at 370. Accordingly, ASIC did not have a duty to defend Integrity in the Underlying Matter.

We also agree with ASIC that the allegation of negligent training and supervision of employees is not a "professional service" as defined in the Policy or under New York law. The

ASIC Policy defines "Professional Services" as "the following services when performed by the Insured in the ordinary conduct of the Insured's profession *for or on behalf of a customer or client for a fee or other compensation . . .*" (ASIC Policy at 15) (emphasis added). New York courts have consistently held that acts or omissions that "set the stage for the performance of business or professional services" are not professional activities within the scope of a professional liability policy. See Albert J. Schiff Assocs., Inc. v. Flack, 417 N.E.2d 84, 88 (N.Y. 1980); see also Cmty. Hosp. at Glen Cove v. Am. Home Assurance Co., 567 N.Y.S.2d 122, 123 (N.Y. App. Div. 1991) (stating that negligent supervision and training of a physician was not a "professional service"); Propis v. Fireman's Fund Ins. Co., 492 N.Y.S.2d 228, 231 (N.Y. App. Div. 1985), aff'd, 489 N.E.2d 250 (N.Y. 1985) (holding that the hiring and firing of employees is a nonprofessional business activity). Supervision and training merely "set the stage" for the Integrity employees' job performance. Further, there is no allegation that the supervision or training was done "for or on behalf of a customer or client for a fee or other compensation." (See ASIC Policy at 15.) Accordingly, Fidelity's allegation of negligent supervision or training was not within the scope of the Insuring Agreement.

### B. POLICY EXCLUSIONS AS A BASIS FOR DENYING A DEFENSE

ASIC also claims that its denial of a defense was correct based on numerous exclusions in the Policy. The relevant exclusions for Count IV of the Underlying Matter are Exclusions M, N, 1, and 6. Even if we were to find above that the Underlying Complaint contained sufficient facts to trigger a duty to defend Integrity, we agree with ASIC that Exclusion 6 clearly excluded coverage.

Exclusion 6 of the ASIC Policy, which was added via the Title and Escrow Services Endorsement, provides that the Policy does not apply to any claim "alleging, arising out of,

based upon, relating to, or attributable to, directly or indirectly, any . . . commingling of funds or accounts, inability to pay or failure to safeguard funds." (ASIC Policy at 15.) ASIC argues that Exclusion 6 is clear and unambiguous and directly applies to Count IV due to the allegations in the Underlying Complaint. (Def.'s Br. in Support Mot. J. on Pleadings/Summ. J. at 23-25.) In response, Fidelity argues that: (1) Exclusion 6 does not apply to its averments of failure to properly train and supervise employees; and (2) the Negligence Count against Integrity did not "arise out of" Drechsel's commingling, failure to safeguard funds, or inability to pay; rather, the averment is the opposite—that Drechsel's commingling of the funds arose out of Integrity's negligence in maintaining and supervising the Escrow Account. (Pl.'s Resp. Opp'n Def.'s Mot. at 27-29.)

We agree with ASIC that the clear and unambiguous language of Exclusion 6 bars coverage for Count IV of the Underlying Complaint. First, it is clear that Fidelity's theory of negligent supervision and maintenance of the Escrow Account in Count IV is, at the very least, indirectly related to, based upon, and attributable to Drechsel's commingling of the funds. For example, Fidelity alleged there were "irregularities in the [Integrity Escrow Account], namely transfers between the operating and escrow accounts," which resulted in shortfalls in the Escrow Account that led to many mortgage transactions not being properly funded. (Underlying Compl. ¶¶ 19-21, 23.) Fidelity further alleged that a representative from Fidelity determined that "funds from the [Escrow Account] . . . [had] been transferred to Mr. Drechsel's personal bank accounts in violation of the Contracts and in breach of Mr. Drechsel, Lenders Edge and Integrity's fiduciary duties to the borrowers." (Id. ¶ 30.) In Count IV, Fidelity's theory of liability against Integrity is that Integrity's negligent supervision and maintenance of the Escrow Account allowed Drechsel to commingle the funds. (See id. ¶¶ 60-65.) Therefore, the allegations of

14

commingling and negligent supervision and maintenance are clearly linked. The linkage comes within the scope of the broad exclusionary language of Exclusion 6 because the claim directly or indirectly alleges, arises out of, is based upon, relates to, or is attributable to the commingling of funds. (See ASIC Policy at 15.)

Second, and more importantly, the allegations in Count IV go *directly* to Integrity's failure to safeguard funds. Indeed, the language in the Underlying Complaint could not be clearer. Fidelity specifically alleged that "Integrity owed a duty to Fidelity to properly maintain or supervise the maintenance of the Integrity Escrow Account and to properly account for all payments and funds Integrity received." (Underlying Compl. ¶ 61.) The alleged failure to properly maintain or supervise the Escrow Account is a claim directly alleging, arising out of, based upon, relating to, and attributable to Integrity's failure to safeguard funds, a claim that is excluded from coverage under the clear and unambiguous language of Exclusion 6. Accordingly, ASIC was not obligated to provide a defense to Integrity.

We may dispose of Fidelity's arguments fairly quickly. First, we determined above that the failure to train or supervise employees is not a "professional service" under the Policy language or New York precedent. Second, Fidelity's argument that Integrity's alleged negligent supervision and maintenance of the Escrow Account did not "arise out of" Drechsel's commingling takes too narrow of a view of Exclusion 6. In support of its argument, Fidelity relies on the Superior Court of Pennsylvania's ("Superior Court") en banc decision in Bd. of Pub. Educ. of Sch. Dist. of Pittsburgh v. Nat'l Union Fire Ins. Co. of Pittsburgh, 709 A.2d 910 (Pa. Super. Ct. 1998) (en banc). In Bd. of Pub. Educ., a civil rights complaint was filed on behalf of a minor student against, *inter alia*, the School District of Pittsburgh and the president of a teacher-parent organization. Id. at 911. The complaint alleged that due to the school district's

15

negligent supervisory conduct, the president of the teacher-parent organization was able to sexually molest the minor student. Id. at 911-12. The insurer denied coverage on the basis of several policy exclusions, which provided that "[t]his policy does not apply . . . to any claims *arising out of* . . . assault or battery or . . . to any claim *arising out of* bodily injury to . . . any person." Id. at 912 (emphasis added). The school district ultimately settled the underlying matter and brought a coverage action against the insurer, claiming the insurer breached the contract and acted in bad faith in not defending the school district. Id.

The Superior Court reasoned that the negligence claim against the school district did not "arise out of" the molestation of the student; instead, the molestation of the student "arose out of" the negligent failings of the school district. Id. at 916. The court stated that the "allegations against the School District were of negligence and violations of the student's constitutional rights. While there was a criminal act and an assault or battery here, that was not the act of the School District." Id. at 917. Therefore, the Superior Court held that the exclusions the insurer relied on were not applicable to the student's allegation against the school district. Id. at 916-17.

Bd. of Pub. Educ. is a Pennsylvania case that analyzed the limited policy language of claims "arising out of" certain conduct. Exclusion 6 of the ASIC Policy contains much broader language, excluding claims "alleging, arising out of, based upon, relating to, or attributable to, directly or indirectly," any commingling or failure to safeguard funds. (ASIC Policy at 15.) Bd. of Pub. Educ. is inapposite, as the policy language in that case is very different than the ASIC Policy. However, even if Exclusion 6 did contain only the limited language of "arising out of," Fidelity's allegation in Count IV of failure to supervise and maintain the Escrow Account

16

*directly arises out* of the failure to safeguard funds. Accordingly, Exclusion 6 barred coverage for Count IV of the Underlying Complaint.[10]

## IV. CONCLUSION

Under New York law, in evaluating whether an insurer must defend its insured when a complaint has been filed, an examination of the policy and the factual allegations must be conducted to determine whether there is a reasonable possibility of coverage. See Int'l Bus. Machines, 303 F.3d at 424 (quoting First Investors, 152 F.3d at 165-166). The Underlying Complaint in this case lacked any facts to establish any kind of negligence on the part of Integrity in failing to supervise or maintain the Escrow Account. Further, the allegation of failing to train or supervise employees is not a "professional service" as the term is defined in the Policy or under New York law. Therefore, ASIC had no duty to defend Integrity in the Underlying Matter.

However, even if we concluded that the Underlying Complaint contained sufficient facts, the clear and unambiguous language of Exclusion 6 excluded coverage of the Negligence Count because the averments directly pertain to a failure to safeguard funds. Accordingly, ASIC had no defense obligations to Integrity. ASIC's Motion for Judgment on the Pleadings and/or Motion for Summary Judgment is granted, and Fidelity's Motion for Summary Judgment is denied.

An appropriate Order follows.

---

[10] As mentioned above, ASIC also argues that Exclusions M, N, and 1 excluded coverage for Count IV. However, given the clarity that Exclusion 6 barred coverage, we need not address them.
  We also note that Fidelity claims Exclusion C required ASIC to defend Integrity in the Underlying Matter. While Integrity may have relied on Exclusion C in its coverage denial letter, it does not currently move for judgment on the pleadings and/or summary judgment based on that exclusion. Further, ASIC did not solely rely on Exclusion C as its basis for denying a defense and coverage, as outlined above. Accordingly, Exclusion C has no impact in this case.