# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| FIDELITY NATIONAL TITLE INSURANCE CO., as assignee of and successor in interest to LENDERS EDGE SETTLEMENT SERVICES, LLC and INTEGRITY ASSURANCE, INC., | : : : : : : | CIVIL ACTION |
| Plaintiff, | : : | |
| v. | : | No. 16-1360 |
| MAXUM INDEMNITY COMPANY a/k/a MAXUM SPECIALTY INSURANCE GROUP and AMERICAN SAFETY INDEMNITY COMPANY, | : : : : : : | |
| Defendants. | : : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                        **SEPTEMBER 12, 2017**

Presently before the Court is Defendant Maxum Indemnity Company a/k/a Maxum Specialty Insurance Group's ("Maxum") Motion for Judgment on the Pleadings and/or Motion for Summary Judgment and Plaintiff Fidelity National Title Insurance Co.'s ("Fidelity") Response in Opposition. Also before the Court is Fidelity's Cross-Motion for Summary Judgment, Maxum's Response in Opposition, Fidelity's Reply Brief, and Maxum's Sur-reply. For the reasons noted below, Maxum's Motion for Judgment on the Pleadings and/or Motion for Summary Judgment is granted, and Fidelity's Motion for Summary Judgment is denied.

**I.     BACKGROUND**

This is a breach of contract action regarding a professional liability insurance policy ("the Policy" or "Maxum Policy") issued by Maxum to Lenders Edge Settlement Services, LLC

("Lenders Edge"). (See generally Compl.; see also Def.'s Mot. J. on Pleadings/Mot. Summ. J., Ex. B ("Maxum Policy").) Specifically, Fidelity, an assignee and successor in interest to Lenders Edge's cause of action, claims that Maxum breached its obligation to defend Lenders Edge in a matter filed in the Court of Common Pleas of Philadelphia County known as Fid. Nat'l Title Ins. Co. v. Lenders Edge Settlement Servs., LLC, et al., No. 130902562 ("the Underlying Matter"). Maxum denied a defense and coverage to Lenders Edge for the Underlying Matter via correspondence dated November 11, 2013. (Def.'s Br. in Support Mot. J. on Pleadings/Summ. J. at 2.) Maxum contends that the denial of a defense and coverage was correct pursuant to (1) the Complaint ("Underlying Complaint") filed in the Underlying Matter; (2) the clear and unambiguous Policy provisions; and (3) Pennsylvania law.[1] (Id.) Consequently, Maxum filed this Motion for Judgment on the Pleadings and/or Motion for Summary Judgment confirming the denial of a defense and coverage and seeking dismissal of all claims directed towards it in this matter. Fidelity filed a Response in Opposition to Maxum's Motion and separately cross-moved for summary judgment.

### A.     THE UNDERLYING MATTER

The Plaintiff in the Underlying Matter is identified as Fidelity National Title Insurance Company, a national title insurance underwriting company. (Def.'s Mot. J. on Pleadings/Summ. J. ¶ 7) (citing Ex. D ¶ 1 ("Underlying Compl.").) The Underlying Complaint was filed on or about September 23, 2013, in the Court of Common Pleas of Philadelphia County, asserting claims of declaratory judgment, negligence and vicarious liability, breach of contract, personal guarantee, and specific performance. (Id. ¶ 8) (citing Underlying Compl.) The Underlying Complaint identified Lenders Edge, Integrity Assurance, Inc. ("Integrity"), and their owners,

---

[1] Fidelity and Lenders Edge agree that Pennsylvania law governs the instant dispute. (See Pl.'s Resp. Opp'n Def.'s Mot. at 9 n.1.; Def.'s Br. in Support Mot. J. on Pleadings/Summ. J. at 6.)

principals, and/or alleged employees, Alfred J. Drechsel ("Drechsel"), Andrew C. Salvucci, and Charles W. Morrone, as Defendants. (Id. ¶ 9) (citing Underlying Compl. ¶¶ 4-6.)

The Underlying Matter asserted that Fidelity and Lenders Edge entered into an Issuing Agency Contract that appointed Lenders Edge as a policy issuing agent authorized to undertake certain duties regarding the issuance of title insurance, commitments, policies, endorsements, and other title assurances for real property. (Id. ¶ 10) (citing Underlying Compl. ¶¶ 12-14.) Fidelity alleged that in conjunction with the Issuing Agency Contract, the Defendants in the Underlying Matter were obligated to maintain and disburse funds related to the real estate transactions in accordance with the purpose for which they were entrusted. (Id. ¶ 11) (citing Underlying Compl. ¶ 15.) The Underlying Complaint alleged that the Defendants breached the contract by creating "irregularities in the Accounts;" creating "shortfall[s] in both Accounts resulting in many mortgage transactions not being funded and properly closed;" and creating a shortfall in the approximate amount of $2,136,718.69. (Id. ¶ 12) (citing Underlying Compl. ¶¶ 24, 29.) It is specifically alleged that funds from the Accounts were transferred to Drechsel's personal accounts.[2] (Id. ¶ 13) (citing Underlying Compl. ¶¶ 30-34.)

For example, the Underlying Complaint alleged that on September 16, 2013, Fidelity discovered irregularities in the Lenders Edge Escrow Account. (Underlying Compl. ¶ 23.) The next day, September 17, 2013, Fidelity discussed the irregularities with Drechsel, who acknowledged shortfalls in the Escrow Account that resulted in many mortgage transactions not being funded or properly closed. (Id. ¶ 24.) On September 18, 2013, Fidelity confirmed that Lenders Edge and Integrity were the escrow and title agents for eighteen mortgage transactions

---

[2] The Underlying Complaint refers to "Accounts" because Drechsel is alleged to have transferred money from the "Lenders Edge Escrow Account" and the "Integrity Escrow Account." (See Underlying Compl. ¶ 20.) Because this Opinion concerns only Maxum's alleged obligation to defend Lenders Edge in the Underlying Matter, we will only refer to the "Lenders Edge Escrow Account" or "Escrow Account."

with total outstanding mortgage payoffs of at least $3,658,592.72. (Id. ¶ 25.) Fidelity was the underwriter for fifteen of the eighteen transactions, which had outstanding payoffs of $2,871,718.69. (Id. ¶ 26.) As of September 18, 2013, the Lenders Edge Escrow Account had a balance of $735,000, creating a $2,136,718.69 shortfall in the amount needed to satisfy the approximately $2,871.718.69 in outstanding payoffs. (Id. ¶ 29.) On or about September 18, 2013, a representative from Fidelity reviewed the Lenders Edge and Integrity Accounts records and determined that funds from the accounts had been transferred to Drechsel's personal bank accounts.[3] (Id. ¶ 30.) Drechsel's signing authority was removed from the Lenders Edge Escrow Account as of September 19, 2013. (Id. ¶ 35.)

Two Counts in the Underlying Complaint were specifically directed towards Lenders Edge: Count III – Negligence/Vicarious Liability ("Count III" or the "Negligence Count"), which sought monetary damages arising from Lenders Edge's negligent disregard of its duties; and Count V – Breach of Contract, which sought monetary damages arising from Lenders Edge's breach of its agency agreement with Fidelity. (See Underlying Compl.) In addition, three Counts were pleaded against all defendants: Count I – Declaratory Judgment; Count IX – Accounting; and Count X – Specific Performance. Fidelity concedes that the Maxum Policy did not cover Counts I, V, IX, and X, but argues that Count III, the Negligence Count, was "clearly" covered. (Pl.'s Resp. Opp'n Def.'s Mot. at 12.) Accordingly, the crux of the matter before the Court is whether the Maxum Policy covered Count III of the Underlying Complaint.

The Negligence Count, which incorporated by reference all prior averments, stated as follows:

> ¶ 55. Defendant Lenders Edge owed a duty to Fidelity to properly maintain or supervise the maintenance of the Lenders

---

[3] The Underlying Complaint detailed a number of transactions between December 21, 2012 and June 12, 2013 that were transfers from the Lenders Edge Account to Drechsel's personal account. (See Underlying Compl. ¶¶ 31-34.)

Edge Escrow Account and to properly account for all payments and funds Lenders Edge received in connection with the issuance of Fidelity's policies pursuant to the Lenders Edge Contract.

¶ 56. Defendant Lenders Edge also owed a duty to Fidelity to properly train and supervise the employees and/or principals to whom it assigned such responsibility.

¶ 57. Lenders Edge breached its duty to Fidelity by negligently disregarding the foregoing duties and responsibilities.

¶ 58. As a result of Lenders Edge's negligent disregard of its duties, Fidelity may be required to indemnify its insured for their covered losses under respective title insurance policies resulting from Lenders Edge's negligent conduct.

¶ 59. As a further result of Lenders Edge's negligent disregard of its duties, Fidelity has been and may be exposed to additional claims from its insureds who may allege to have suffered covered losses under respective title insurance policies resulting from Lenders Edge's negligent conduct.

(Underlying Compl. ¶¶ 55-59.)

**B.     THE POLICY**

Maxum issued a Policy of Professional Liability Insurance number PFP 6020753-01 to Lenders Edge for a Policy Period of November 11, 2012 to November 11, 2013.[4] (Def.'s Mot. J. on Pleadings/Summ. J. ¶ 14) (citing Ex. B, Common Policy Declarations.) The Policy provides the following relevant language:

**PROFESSIONAL LIABILITY COVERAGE FORM (NON-MEDICAL)**

**SECTION I – COVERAGE:**

   **1.     Insuring Agreement**

       **A.** We will pay those sums that an "insured" becomes legally obligated to pay as "damages" because of a "wrongful act" in the rendering of or failure to render

---

[4] Fidelity claims that Maxum issued two policies to Lenders Edge "which incorporate the same terms." (Pl.'s Resp. Opp'n Def.'s Mot. at 13-14.) Maxum mentions only one policy. (Def.'s Mot. J. on Pleadings/Summ. J. ¶ 14.) Fidelity does not claim any significance as a result of there being two policies. Thus, we will refer to the "Policy" or the "Maxum Policy" for simplicity.

5

"professional services" by any "insured" or by any person for whose "wrongful acts" an "insured" is legally responsible for. We will have the right and duty to defend any "insured" against any "suit" seeking those "damages". However, we will have no duty to defend an "insured" against any "suit" seeking "damages" for a "wrongful act" to which this insurance does not apply.

**2. Exclusions**

This Insurance does not apply to:

**B.** Any dishonest, fraudulent, criminal or malicious act or omission by any "insured" or at the direction of any "insured".

**Q.** Any "claim" arising out of or resulting from any "insured's" fiduciary duty, responsibility or obligation.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**D.** A limited liability company, you are an "insured". Your members are also "insureds", but only with respect to the conduct of your business. Your managers are "insureds", but only with respect to their duties as your managers.

**2.** Each of the following is also an "insured":

**A.** Your "employees", other than either your "executive officers" or other officers (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

**SECTION VI – INNOCENT INSURED PROVISION**

**1.** Whenever coverage under this insurance would be excluded, suspended or lost:

**A.** Because of any exclusion relating to criminal, dishonest, fraudulent or malicious acts, errors or omissions by any "insured", and with respect to which any other "insured" did not personally participate or personally acquiesce in or remain passive after having personal knowledge thereof . . .

The Company agrees that such insurance as would otherwise be afforded under this policy shall cover and be paid with respect to those "insureds" who did not personally commit or personally participate in committing or personally acquiesce in or remain passive after having personal knowledge of (a) one or more of the acts, errors or omissions described in any such exclusion; or (b) such failure to

give notice, provided that if the condition be one with which such "insured" can comply, after receiving knowledge thereof, the "insured" entitled to the benefit of this Section shall comply with such condition promptly after obtaining knowledge of the failure of any other "insured" to comply therewith.

**ENDORSEMENT E077**

The following additional Exclusions are added to the policy:

This insurance does not apply to nor shall we have the duty to defend or indemnify any "claim" or "suit" arising out of or resulting from:

> 3. Any damages arising out of the comingling, conversion, misappropriation or defalcation of funds or other property.

(See Maxum Policy.)

## II. LEGAL STANDARD

### A. RULE 12(c) STANDARD

A party may move for judgment on the pleadings "[a]fter the pleadings are closed - but early enough not to delay trial." Fed. R. Civ. P. 12(c). A court may grant a motion for judgment on the pleadings "if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law." DiCarlo v. St. Mary Hosp., 530 F.3d 255, 262 (3d Cir. 2008) (citation omitted). "We 'view[] the facts alleged in the pleadings and the inferences to be drawn from those facts in the light most favorable to the plaintiff.'" D.E. v. Cent. Dauphin Sch. Dist., 765 F.3d 260, 271 (3d Cir. 2014) (quoting Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 253 (3d Cir. 2004)). "A Rule 12(c) motion 'should not be granted unless the moving party has established that there is no material issue of fact to resolve, and [the moving party] is entitled to judgment as a matter of law.'" Id. (quoting Mele, 359 F.3d at 253). "Ordinarily, in deciding a motion for judgment on the pleadings, the court considers the pleadings and attached exhibits, undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on

7

the documents, and matters of public record." Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010) (footnotes omitted).[5]

### B. RULE 56(a) STANDARD

Federal Rule of Civil Procedure 56(a) states that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is material if it could affect the outcome of the suit after applying the substantive law. Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" Compton v. Nat'l League of Prof'l Baseball Clubs, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998) (quoting Liberty Lobby, 477 U.S. at 255).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Once the moving party

---

[5] The parties do not dispute that Pennsylvania law applies to the instant matter. Under Pennsylvania law, it is clear that an insurer's duty to defend is determined by comparing the allegations in the Underlying Complaint and the insurance policy. See Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 896 (Pa. 2006). Maxum moves for judgment on the pleadings and/or summary judgment pursuant to Federal Rules of Civil Procedure 12(c) and 56(a), respectively. Under Rule 12(d), if matters outside of the pleadings are presented and not excluded by the Court, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). We need only to consider the Underlying Complaint and the Maxum Policy to determine whether Maxum breached its duty to defend Lenders Edge in the Underlying Matter. See Kvaerner, 908 A.2d at 896. Accordingly, we will treat Maxum's Motion as one for judgment on the pleadings because no matters outside of the pleadings and attached exhibits will be considered.

has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." See Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992). "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. Tziatzios v. United States, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines that there are no genuine disputes of material fact, then summary judgment will be granted. Celotex, 477 U.S. at 322.

## C. DUTY TO DEFEND

"An insurer's duty to defend its insured is broader than its duty to indemnify." State Farm Fire & Cas. Co. v. Moreco Constr., Inc., 171 F. Supp. 3d 373, 378 (E.D. Pa. 2016) (citing Ramara, Inc. v. Westfield Ins. Co., 814 F.3d 660, 672-73 (3d Cir. 2016)). "Under Pennsylvania law, which is applicable on the insurance coverage issue, a court ascertaining whether an insurer has a duty to defend its insured makes its determination by defining the scope of coverage under the insurance policy on which the insured relies and comparing the scope of coverage to the allegations of the underlying complaint." Id. (quoting Ramara, 814 F.3d at 672-73) (internal quotation marks omitted). "If the allegations of the underlying complaint *potentially* could support recovery under the policy, there will be coverage at least to the extent that the insurer has a duty to defend its insured in the case." Id. (quoting Ramara, 814 F.3d at 672-73) (emphasis in original) (internal quotation marks omitted). If an underlying action against an insured "avers facts which would support a recovery that is covered by the policy, it is the duty of the insurer to defend until such time as the claim is confined to a recovery that the policy does not cover." Id.

(quoting Erie Ins. Exch. v. Transamerica Ins. Co., 533 A.2d 1363, 1368 (Pa. 1987)) (internal quotation marks omitted).

"In determining an insurer's duty to defend, we must consider only the allegations of the underlying action and may not look outside its 'four corners' or consider extrinsic evidence." Id. (citing Ramara, at 672-73) (stating that "[i]n Ramara, our Court of Appeals noted Pennsylvania's 'four corners' rule, also known as the 'eight corners' rule, directing 'a court in deciding if there is coverage [to] look at both the insurance policy and the underlying complaint'"). "We view the allegations of the underlying complaint as true and liberally construe the allegations in favor of the insured." Id. (citing Ramara, 814 F.3d at 673-74). "If there is any possibility coverage has been triggered by allegations in the underlying complaint, an insurer has a duty to defend." Id. (citing Ramara, 814 F.3d at 673-74).

Even in cases where only "a single claim in a multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover" on the covered claim. Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999). On the other hand, if the insurer can confine the complaint to "recovery that is not within the scope of the coverage," the insurer bears no duty to defend. Westport Ins. Corp. v. Black, Davis & Shue Agency, Inc., 513 F. Supp. 2d 157, 164 (M.D. Pa. 2007) (quoting USX Corp. v. Liberty Mut. Ins. Co., 444 F.3d 192, 202 n.18 (3d Cir. 2006)) (internal quotation marks omitted).

### D. INTERPRETATION OF THE POLICY

Interpreting an insurance contract is a question of law. Meyer v. CUNA Mut. Ins. Soc'y, 648 F.3d 154, 162 (3d Cir. 2011). In interpreting a contract, a court's primary goal "is to ascertain the parties' intentions as manifested by the policy's terms." Kvaerner, 908 A.2d at 897.

"Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language." Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999) (quoting Gene & Harvey Builders, Inc. v. Pa. Mfrs. Ass'n Ins. Co., 517 A.2d 910, 913 (Pa. 1986)).

## III.  DISCUSSION

As indicated above, Fidelity concedes that the analysis of whether Maxum had a duty to defend Lenders Edge in the Underlying Matter is strictly confined to Count III of the Underlying Complaint. (Pl.'s Resp. Opp'n Def.'s Mot. at 12.) Maxum maintains that it owed no duty to defend Lenders Edge in the Underlying Matter because: (1) there were no factual allegations of negligence made against it, but only conclusory legal contentions; and (2) Exclusions B, Q, and Endorsement E077 excluded coverage. (Def.'s Br. in Support Mot. J. on Pleadings/Summ. J. at 9-11.) In response, Fidelity claims that Count III of the Underlying Complaint was sufficient to trigger the duty to defend and that none of the exclusions on which Maxum relies apply. (Pl.'s Resp. Opp'n Def.'s Mot. at 17-24.) Fidelity also contends that the exclusions are inapplicable to Lenders Edge based on the Innocent Insured Provision in Section VI of the Policy. (Id. at 24-27.)

### A.  FACTUAL ALLEGATIONS IN THE UNDERLYING COMPLAINT

We will first address Maxum's argument that it correctly denied a defense to Lenders Edge based on the allegations in the Underlying Complaint. "An insurer is obligated to defend its insured if the *factual allegations* of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy." Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 541 (Pa. 2010) (emphasis added). "Pennsylvania courts have emphasized

that the particular cause of action pleaded is not determinative of whether coverage has been triggered." CAT Internet Sys., Inc. v. Providence Washington Ins. Co., 153 F. Supp. 2d 755, 760 (E.D. Pa. 2001), aff'd sub nom. Cat Internet Servs., Inc. v. Providence Washington Ins. Co., 333 F.3d 138 (3d Cir. 2003) (citations and internal quotation marks omitted). "Rather, it is necessary to look at the factual allegations contained in the complaint." Id.

Count III of the Underlying Complaint alleged that Lenders Edge owed a duty to Fidelity "to properly maintain or supervise the maintenance of the Lenders Edge Escrow Account and to properly account for all payments and funds Lenders Edge received in connection with the issuance of Fidelity's policies pursuant to the Lenders Edge Contract." (Underlying Compl. ¶ 55.) Count III also alleged that Lenders Edge owed "a duty to Fidelity to properly train and supervise the employees and/or principals to whom it assigned such responsibility." (Id. ¶ 56.) Maxum argues that, despite Fidelity's allegations that Lenders Edge was liable for negligent supervision and maintenance of the Escrow Account and negligent training of its employees, there are no facts alleged in the Underlying Complaint to support such claims. (Def.'s Br. in Support Mot. at 10 n.3.) We agree with Maxum.

In short, there are no *factual* allegations in the Underlying Complaint that would trigger a duty to defend Lenders Edge in the Underlying Matter. Fidelity's Underlying Complaint goes into specific detail about numerous transfers between the Lenders Edge Escrow Account and Drechsel's personal checking account. (See, e.g., Underlying Compl. ¶¶ 31-36.) However, the Underlying Complaint is devoid of facts to establish any kind of negligent supervision or maintenance of the Escrow Account or failure to properly supervise employees. The Underlying Complaint contains what amounts to simple conclusory allegations of duty, breach, causation, and injury. Pennsylvania law is clear that an insurer's obligation to defend its insured is

12

determined solely by comparing the factual allegations of the Underlying Complaint to the insurance policy at issue.  See Jerry's Sports Ctr., 2 A.3d at 541.  The particular cause of action pleaded is not what determines defense and coverage obligations.  See CAT Internet Sys., 153 F. Supp. 2d at 760.  Accordingly, Maxum did not have a duty to defend Lenders Edge in the Underlying Matter.

### B. POLICY EXCLUSIONS AS A BASIS FOR DENYING A DEFENSE

Maxum also denied a defense to Lenders Edge based on numerous exclusions in the Policy.  The relevant exclusions for Count III of the Underlying Matter are Exclusions Q, B, and Endorsement E077.  Even if we were to find above that the Underlying Complaint contained sufficient facts to trigger in Maxum a duty to defend Lenders Edge, we agree with Maxum that it rightly denied a defense based on Exclusion Q.

#### 1. Exclusion Q

Exclusion Q of the Maxum Policy provides that the Policy does not apply to "any claim arising out of or resulting from any insured's fiduciary duty, responsibility or obligation." (Maxum Policy at 4.)  The only argument Fidelity puts forth regarding why Exclusion Q does not serve to bar coverage for Count III in the Underlying Matter is as follows:

> [T]here can be no serious argument that Exclusions D and Q (breach of contract and fiduciary duty, respectively) of the Maxum Policies . . . entirely exclude any possibility of coverage for professional negligence.  Those exclusions may have applicability to other counts and/or other defendants, but they do not speak at all to Count III, Negligence against Lenders Edge.

(Pl.'s Resp. Opp'n Def.'s Mot. at 18) (internal quotation marks, emphasis, and footnote omitted).

We agree with Maxum that the clear and unambiguous language of Exclusion Q bars coverage for Count III of the Underlying Complaint.  In the Underlying Matter, Fidelity specifically pleaded that a representative of Fidelity reviewed the Lenders Edge Escrow Account

and determined that funds from the account had been transferred to Drechsel's personal account "in breach of Mr. Drechsel, *Lenders Edge* and Integrity's *fiduciary duties to the borrowers*." (Underlying Compl. ¶ 30) (emphasis added). Fidelity further pleaded that "Lenders Edge and Integrity owed the individuals and entities that entrusted funds to Lenders Edge and Integrity a *fiduciary duty to protect these funds*." (Id. ¶ 42) (emphasis added). The Negligence Count against Lenders Edge in the Underlying Complaint is predicated on Lenders Edge not properly maintaining or supervising the Escrow Account and not properly training or supervising its employees. (See id. ¶¶ 55, 56.) However, the Maxum Policy does not provide coverage when there is a claim that arises out of, or results from, any insured's fiduciary duty, responsibility, or obligation. (Maxum Policy at 4.) Fidelity specifically alleged that Lenders Edge owed a fiduciary duty to the individuals and entities that entrusted the funds to Lenders Edge. Therefore, it is clear that the Negligence Count directly arises out of, or results from, Lenders Edge's fiduciary responsibilities and obligations in not properly maintaining those fiduciary funds. Accordingly, Exclusion Q excluded any coverage for Count III of the Underlying Complaint, and Maxum was not obligated to provide a defense to Lenders Edge.

2.  **Exclusion B**

Exclusion B of the Maxum Policy provides that the insurance does not apply to "[a]ny dishonest, fraudulent, criminal or malicious act or omission by *any* 'insured' or at the direction of any 'insured.'" (Maxum Policy at 10) (emphasis added). Fidelity stresses that Exclusion B does not bar coverage for Count III in the Underlying Matter because Count III limits the allegation to negligence against Lenders Edge only, and not any intentional criminal, malicious, or tortious misconduct by Lenders Edge. (Pl.'s Resp. Opp'n Def.'s Mot. at 18-19.) Maxum

argues that the language in Exclusion B is clear and unambiguous and bars coverage for Lenders Edge, as Drechsel is an "insured" under the Policy.

We agree with Maxum that Fidelity's allegation of negligence against Lenders Edge in the Underlying Complaint comes within the scope of Exclusion B. In making its argument that Exclusion B does not apply to Count III because Lenders Edge was not charged with any dishonest, fraudulent, criminal, or malicious act or omission, but only negligence, Fidelity does not adequately contemplate the scope of the exclusion. Exclusion B explicitly provides that the insurance does not apply when *any insured* commits an act or omission that is dishonest, fraudulent, criminal, or malicious in nature. Fidelity does not dispute that Drechsel is an "insured" under the Policy. As outlined above, Fidelity made specific factual averments regarding Drechsel's transfers between the Lenders Edge Escrow Account and his own personal bank account. (See Underlying Compl. ¶¶ 31-36.) Fidelity also averred that upon "information and belief, Defendant Alfred J. Drechsel has already *wrongfully* disbursed funds from the Accounts into his personal accounts at Wells Fargo." (Id. ¶ 44) (emphasis added). Exclusion B operates to exclude coverage when any insured commits any of the applicable conduct. Accord Westport Ins. Corp. v. Hanft & Knight, P.C., 523 F. Supp. 2d 444, 460-61 (M.D. Pa. 2007) (noting that Pennsylvania law is clear that the use of "any insured," rather than "the insured," bars coverage for innocent co-insureds); Auto. Ins. Co. of Hartford v. Morris ex rel. Morris, No. 97-5372, 1999 WL 159882, at *7-8 (E.D. Pa. Mar. 22, 1999) (excluding coverage for negligence allegation against a mother for her son's intentional act when policy exclusion applied to bodily injury "expected or intended by any insured, including bodily injury caused by or resulting from the intentional or reckless acts of any insured"); Donegal Mut. Ins. Co. v. Baumhammers, 893 A.2d 797, 818 (Pa. Super. Ct. 2006) (en banc), aff'd in part, rev'd in part on other grounds, 938

15

A.2d 286 (Pa. 2007) (finding that a criminal acts exclusion that related to "any insured" excluded coverage for negligence claim against parents). Fidelity's argument that the exclusion does not apply because Count III is tailored to a negligence allegation against Lenders Edge is weak because, as mentioned, the exclusion is triggered as long as any insured commits a dishonest, fraudulent, criminal, or malicious act. It is of no significance that Lenders Edge has not committed any of that conduct. Accordingly, Count III of the Underlying Complaint comes within the scope of Exclusion B.

### 3. Endorsement E077

Endorsement E077 of the Policy excludes coverage for "[a]ny damages arising out of the commingling, conversion, misappropriation or defalcation of funds or other property." (Maxum Policy at Endorsement E077.) Fidelity argues that Endorsement E077 does not exclude coverage for Count III of the Underlying Complaint because the Negligence Count against Lenders Edge did not "arise out of" any commingling, conversion, or misappropriation of funds. (Pl.'s Resp. Opp'n Def.'s Mot. at 22-24.) Rather, Fidelity claims the averment is the opposite—that Drechsel's commingling and conversion of the funds arose out of Lenders Edge's negligence in maintaining and supervising the Escrow Account. (Id.)

We agree with Fidelity that Endorsement E077 would not have barred coverage for their theory of negligent supervision and maintenance of the Escrow Account. In support of its argument, Fidelity points us to the Superior Court of Pennsylvania's ("Superior Court") en banc decision in <u>Bd. of Pub. Educ. of Sch. Dist. of Pittsburgh v. Nat'l Union Fire Ins. Co. of Pittsburgh</u>, 709 A.2d 910 (Pa. Super. Ct. 1998) (en banc). In <u>Bd. of Pub. Educ.</u>, a civil rights complaint was filed on behalf of a minor student against, *inter alia*, the School District of Pittsburgh and the president of a teacher-parent organization. <u>Id.</u> at 911. The complaint alleged

16

that due to the school district's negligent supervisory conduct, the president of the teacher-parent organization was able to sexually molest the minor student. Id. at 911-12. The insurer denied coverage on the basis of several policy exclusions, which provided that "[t]his policy does not apply . . . to any claims *arising out of* . . . assault or battery or . . . to any claim *arising out of* bodily injury to . . . any person." Id. at 912 (emphasis added). The school district ultimately settled the underlying matter and brought a coverage action against the insurer, claiming the insurer breached the contract and acted in bad faith in not defending the school district. Id.

The Superior Court held that the exclusions the insurer relied on were not applicable to the student's allegation against the school district. Id. at 916-17. The Superior Court reasoned that the negligence claim against the school district did not "arise out of" the molestation of the student; instead, the molestation of the student "arose out of" the negligent failings of the school district. Id. at 916. The court stated that the "allegations against the School District were of negligence and violations of the student's constitutional rights. While there was a criminal act and an assault or battery here, that was not the act of the School District." Id. at 917. Therefore, the Superior Court held that the insurer was not justified in refusing to defend the school district in the underlying action. Id.

In this case, the relevant policy language excludes coverage for "[a]ny damages arising out of the commingling, conversion, misappropriation, or defalcation of funds or other property." (Maxum Policy at Endorsement E077.) Endorsement E077 does not exclude Count III of the Underlying Complaint because, like the school district's argument in Bd. of Pub. Educ., the claim against Lenders Edge did not arise out of the commingling, conversion, misappropriation, or defalcation of funds. The claim against Lenders Edge is that its negligent supervision and maintenance of the Escrow Account allowed Drechsel to transfer the money from the account

17

into his personal accounts. Accordingly, Endorsement E077 was not a bar to coverage in the Underlying Matter.

## C. THE INNOCENT INSURED PROVISION

Although we concluded above that Fidelity's Negligence Count came within the scope of Exclusions Q and B, we must still address Fidelity's argument that, nonetheless, the Innocent Insured Provision saves coverage. Specifically, Fidelity argues that Exclusion B and Endorsement E077 were inapplicable to Lenders Edge based squarely on the language in the Innocent Insured Provision.

We may dispose of Fidelity's argument quickly. As noted above, the clear and unambiguous language of Exclusion Q barred coverage for Count III in the Underlying Matter because the allegations directly pertained to Lenders Edge's fiduciary responsibilities and obligations in not properly maintaining and supervising the fiduciary accounts. Fidelity does not argue that the Innocent Insured Provision applies to Exclusion Q. Accordingly, the Innocent Insured Provision has no impact on Maxum's reliance on Exclusion Q in not defending Lenders Edge in the Underlying Matter.[6]

---

[6] Although we concluded above that the Negligence Count came within the scope of Exclusion B, we believe that the Innocent Insured Provision would have saved coverage for Lenders Edge under that exclusion. The Innocent Insured Provision provides that, when the insurance would have been excluded or lost because of an exclusion relating to "criminal, dishonest, fraudulent or malicious acts . . . by any 'insured', and with respect to which any other 'insured' did not personally participate or personally acquiesce in," Maxum agreed that "such insurance as would otherwise be afforded under [the Policy] shall cover and be paid with respect to those 'insureds' who did not personally commit or personally participate in committing or personally acquiesce in . . . one or more of the facts, errors or omissions described in any such exclusion." (Maxum Policy at 9.)

     In this case, the Negligence Count came within the scope of Exclusion B because Drechsel, an insured, committed an act that was "dishonest, fraudulent, criminal, or malicious." (Id. at 3.) However, the Innocent Insured Provision saves coverage when another insured has not personally committed, personally acquiesced, or remained passive after having personal knowledge of one or more of the acts described in the exclusion. (See id. at 9.) There are no factual allegations in the Underlying Complaint that Lenders Edge personally committed, personally acquiesced, or remained passive in the enumerated conduct in Exclusion B. Accordingly, Maxum's reliance on Exclusion B is misplaced when the Innocent Insured Provision is considered.

18

## IV. CONCLUSION

In evaluating whether an insurer must defend its insured when a complaint has been filed, the factual allegations of the complaint must be compared to the insurance policy to determine whether there is a duty to defend. See Jerry's Sport Ctr., 2 A.3d at 541. The Underlying Complaint in this case lacked any facts to establish any kind of negligence on the part of Lenders Edge in failing to supervise or maintain the Escrow Account. Likewise, there were no facts to show any failure to train employees. Therefore, Maxum had no duty to defend Lenders Edge in the Underlying Matter.

However, even if we concluded that the Underlying Complaint contained sufficient facts, the clear and unambiguous language of Exclusion Q excluded coverage of the Negligence Count. Further, no other policy provision, such as the Innocent Insured Provision, operated to save coverage for claims that Exclusion Q excluded. Accordingly, Maxum had no defense obligations to Lenders Edge. Maxum's Motion for Judgment on the Pleadings and/or Motion for Summary Judgment is granted, and Fidelity's Motion for Summary Judgment is denied.

An appropriate Order follows.